**Arthur J. Eddy, et al., Trustees, v. The People of the State of Illinois, ex rel. Margaret Morgan, et al.**

**Gen. No. 12,143.**

1. DEMURRER—*what admitted by.* A demurrer to a petition for a writ of mandamus admits all facts therein which are well pleaded.

2. STATUTE—*cardinal rule of construction.* In determining the meaning of a statute, all its words, phrases, terms and provisions must be considered in order that the true intent of the legislature may be determined and carried out. If, when so considered, the object or intent of the statute is still in doubt, the court may look to the conditions existing at the time of its passage and the object sought to be accomplished or the defect sought to be remedied by its enactment.

3.  PENSION—*when widow of patrolman entitled to.*  The amendment of 1899 to section 3 of the Act of 1887 providing for a police pension fund, was designed to be retrospective in its operation, and entitles the widow of a patrolman who, at the time of the taking effect of such amendment was on a pension, to a continuance thereof after his death, provided she has not remarried.

Mandamus proceeding.    Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding.    Heard in this court at the October term, 1904.    Affirmed.    Opinion filed February 9, 1905.

**Statement by the Court.**   This is a petition for a writ of mandamus to compel appellants to restore the names of appellees to the pension roll of the police pension fund.

The original petitioner, Margaret Morgan, alleges in the petition, as amended, that she is the widow of James Morgan, who served for twenty years or more upon the police force of the city of Chicago, and then, November 30, 1891, by the Board of Trustees of the police pension fund, was retired and granted a pension of $50 per month, this sum being equal to one-half the salary he had received before his retirement; that he continued to draw such pension until February 21, 1897, when he died; that July 18, 1899, the Police Pension Board placed her name on the pension roll as the widow of said James Morgan, and awarded her a pension equal to one-half the salary her husband had received while a member of said police force; that she continued to receive said pension monthly from said last mentioned date until September 20, 1904, when appellants ordered her name to be stricken from the pension roll and refused to pay to her said pension; that she protested to appellants against such action, and demanded of them that they replace her name on said roll and continue to pay her such pension, but they refused so to do.

As further ground for her contention the petitioner alleges that her said husband was pensioned under the provisions of section 3 of "An Act to provide for the setting apart, formation and disbursement of a police pension fund in cities, villages and incorporated towns," in force July 1, 1887 (R. S. 1889, section 393, ch. 24); that under this sec-

tion there was no provision pensioning the widow of any member of the police force, but that section was amended by an Act approved April 24, 1899, in force July 1, 1899, so as to include the widows of pensioned officers, and she sets out the amendment in full. That section 6 of an Act entitled " An Act for the relief of disabled members of the police force and fire department in cities and villages," in force July 1, 1877 (R. S. 1877, Hurd, section 228, ch. 24), provides for the pensioning of the widow of any member of the police or fire department who "shall die after ten years' service in the police or fire departments, and while still in the service of the same." This last Act was amended by an Act of 1879, the principal change being the extension of the benefit of the Act to such members of the police force and fire department, who shall keep up the payments of their assessments after they have retired from the service, and to the widows and children of such members. Session Laws, 1879, p. 72, Bradwell. The Act, as thus amended, remained in force until 1887, when two Acts were passed, the one relating to the police pension fund (R. S. 1889, Hurd, sections 391 to 402, inclusive, chapter 24), and the other to the firemen's pension fund (R. S. 1889, Hurd, sections 403 to 419, chapter 24), thus creating two separate funds where there had been but one: that the last sentence of section 10 of the firemen's pension fund Act, with some slight verbal changes, is the same as is the last part of said section 6 of the Act of 1877, which provides a pension for the widow of a member of the police force or of the fire department; but by inadvertence or oversight this sentence was omitted from the Act of 1889 relating to the police pension fund; and that an amendment was passed in 1899 (Session Laws of 1899, p. 95, Bradwell), amending section 3 of the Act of 1887 so as to read as follows:

" Whenever any person, at the time of taking effect of said act to which this is an amendment, or thereafter, shall be duly appointed and sworn, and have served for the period of twenty years or more upon the regularly consti- tuted police force of said city, village or town of this state, subject to the provision of this act, said board shall ordei

and direct that such person, after becoming fifty years of age, and his service upon such police force shall have ceased, and all officers entitled to and having been pensioned under said act to which this is an amendment, after the taking effect of this act, shall be paid from such fund a yearly pension equal to one-half the amount of the salary attached to the rank which he may have held on said police force for one year next preceding the expiration of said term of twenty years. And after the decease of such member, his widow or minor child or children under sixteen years of age, if any, surviving him, shall be entitled to the pension provided for in this act of such a deceased husband or father, but nothing in this or any other section of this act shall warrant the payment of any annuity to any widow of a deceased member of such Police Department after she shall have remarried."

That this amendment to said section 3 contains expressions which clearly indicate that it was the intention of the legislature to put this amended section in the original act as if it had been a part of that act from the beginning. That said amendment was passed after repeated efforts upon the part of the petitioner and others; that each succeeding legislature from 1887 up to and including 1899, was appealed to to remedy the said defect in the Act of 1887; that when the amendment was up for consideration in both branches of the General Assembly in 1899, " a discussion took place in both Senate and House as to the prospective and retrospective effect of said amendment, and that after careful consideration said amendment was passed, and that petitioner and others were present and heard the discussion, and believes that the legislature intended said amendment of 1899 to be retrospective; that petitioner was one of the number who petitioned the legislature at various times to amend the Act of 1887 so as to include the widows of pensioned officers who died prior to the year 1899;" that after the passage of this last act, and at the time petitioner made her application for a pension under the same, the Police Pension Board discussed the said amendment and decided that it was retrospective in its character, and therefore placed petitioner upon the pension

roll and paid to her such pension. That her said husband, up to the date of his death, paid into said police pension fund each month the percentage· of his salary as provided by said acts, and that petitioner had paid into said fund one per cent. of her monthly pension. That petitioner has never remarried since the death of her said husband; and that there is sufficient money in said police pension fund with which to pay her pension as· aforesaid. That petitioner, by virtue of the foregoing provisions of law, has a vested right and title to the benefit under said law; and that appellants were without authority when they removed her name from the pension roll and refused to pay to her her pension.

The prayer is for a writ of mandamus directed to appellants, commanding them forthwith to restore her name to said pension roll and to pay to her her pension under the law.

Appellants filed a general demurrer to the petition. Upon the hearing of the demurrer the court overruled the same, and appellants electing to stand by their demurrer, a peremptory writ of mandamus was issued as prayed for in said petition.

By agreement of parties in open court, before said writ was directed to issue, it was ordered " that the orders herein entered and to be entered in this cause shall apply in like force and effect to the following named persons, who are hereby made parties to the within petition for mandamus, as they do to the petitioner, Margaret Morgan, and that the order entered herein directing the Board of Trustees of the Police Pension Fund of the City of Chicago to restore the name of the petitioner to the rolls of the department, apply as well to the within named persons who are entitled to the same benefits of such order as if they had joined in said petition originally." Then follow the names of twenty-two persons.

JOHN W. BECKWITH, Assistant Corporation Counsel, for appellants; EDGAR BRONSON TOLMAN, Corporation Counsel, of counsel.

JOHN E. OWENS and THOMAS H. OWENS, for appellees.

MR. PRESIDING JUSTICE BALL delivered the opinion of the court.

All the well-pleaded facts of the petition are admitted to be true by the demurrer. It follows that petitioner and others, stipulated to be in like situation, are entitled to be placed upon the pension roll and to be paid the pension provided by the act, if the amendment of 1899 to section 3 of the Act of 1887 is retrospective.

It is also conceded by the demurrer that the petitioner and others like situated had attempted to obtain a retrospective amendment in this regard at every session of the legislature from 1887 to date of its passage in 1899, and that appellants in July, 1899, after due consideration declared that it was retrospective, and in pursuance of such decision placed petitioner upon the pension roll and paid to her a pension, in pursuance of the amendment, from that time to September, 1904.

In determining the meaning of a statute all its words, phrases, terms and provisions must be considered in order that the true intent of the legislature may be determined and carried out. If, when thus considered, the object or extent of the statute is still in doubt, the court may look to the conditions existing at the time of its passage and the object sought to be accomplished or the defect sought to be remedied by its enactment. In such cases due regard should be given to contemporaneous construction; and if that construction was generally received and long acquiesced in, it will not be disturbed except for weighty reasons. These principles are so well understood that the citation of authorities is not needed for their support.

The Act as it stood prior to 1887, provided equal benefits for two classes of men, namely, firemen and policemen, who, in the performance of their duties, were exposed to great and presumably equal hardships and dangers; and in case of their death gave equal benefits to their widows and children. When the legislators saw fit to separate the

fund into two parts, the natural inference is that a like protection would be extended to those killed or injured in the performance of duty, or who from disability or from long service became superannuated; that when death came to a member of either class, in good standing, his widow and children would be aided in the manner prescribed by the original Act. When the revision came in 1887, this inference was fully justified so far as concerns the Act relating to firemen, but the twin Act relating to policemen wholly omitted this beneficial provision for their widows and children. Natural equity leads us to believe that this omission was accidental and unintentional. Upon the same grounds we would expect when the omission was supplied that the legislature would place all the widows and children of all deceased members upon an equal and equitable footing by an enactment that would include every case occurring between the time of such omission and the date of the amendment. Looking at the amendment in this light, we think it should be and is to be read as follows:

"Whenever any person at the time of the taking effect of said (1887) act, to which this is an amendment, or thereafter (any time after 1887), shall have been duly appointed and sworn, and shall have served for the period of twenty years or more upon the regularly constituted police force of said city, village or town of this State subject to the provisions of this act, said board shall order and direct that such person (that is, any person who was on the force in 1887, or was after that year appointed), after becoming fifty years of age, and his service upon such police force shall have ceased and all officers entitled to, and having been pensioned under said (1887) act (that is, all men who were and had been pensioned under the act of 1887, or entitled to a pension under said act), to which this is an amendment, after the taking effect of this act, shall be paid a yearly pension equal to one-half his salary, etc. And after the decease of such member (that is, after a man dies who had been drawing such pension and who was a member of any one of the classes above enumerated), his widow or

minor child or children under sixteen years of age shall be entitled to the pension provided for in this act of such a deceased husband or father."

This construction interferes with no vested rights, and affects no existing contracts. It gives to parties equally deserving equal benefits from an ample fund raised, preserved and distributed for their relief. It does no violence to the language of the amendment; on the contrary, it effectuates and carries out what we believe was the intention of the legislature when it passed that act.

It is said that the last sentence of this amendment is in the future tense, and therefore it cannot be retrospective. The entire section must be read and considered. When this is done, the retrospective character of the whole section is apparent. Nor is it certain that the words " shall be entitled " are in the future tense. Considering the acts in this regard in their entirety and their history as shown by the petition and admitted by the demurrer, they may reasonably be read as a command, and therefore are in the imperative mood.

The judgment of the Circuit Court is affirmed.

*Affirmed*